**GREENBERG TRAURIG, LLP**
Brent Sokol (SBN 167537)
sokolb@gtlaw.com
Ryan C. Bykerk (SBN 274534)
bykerkr@gtlaw.com
Caroline Korpiel (SBN 336147)
korpielc@gtlaw.com
1840 Century Park East, Suite 1900
Los Angeles, CA  90067
Telephone:  (310) 586-7700
Facsimile:  (310) 586-7800

Attorneys for Plaintiff
MOUNTAIN MIKE'S PIZZA, LLC

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MOUNTAIN MIKE'S PIZZA, LLC,<br><br>       Plaintiff,<br><br>v.<br><br>SV ADVENTURES, INC., California corporation; SALVATORE VISCUSO, an individual; SANDRA VISCUSO, an individual; and DC Management LLC,<br><br>       Defendants. | **CASE NO. 2:21-cv-02387 TLN-AC**<br><br>**PLAINTIFF MOUNTAIN MIKE'S PIZZA, LLC'S *EX PARTE* MOTION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Action filed:  December 21, 2021 |

## **MOTION FOR TEMPORARY RESTRAINING ORDER**

Pursuant to Federal Rule of Civil Procedure 65 and Eastern District Local Rule 231, Plaintiff Mountain Mike's Pizza, LLC ("MMP") hereby moves for the immediate entry of a temporary restraining order against Defendants SV Adventures, Inc., Salvatore Viscuso and Sandi Viscuso (collectively the "Viscuso Defendants"), and DC Management, LLC due to the irreparable harm that MMP has suffered and continues to suffer due to, among other things, (1) Defendants' unauthorized and continuing infringement of MMP's Mountain Mike's® trademarks and trade dress; and (2) the Viscuso Defendants' refusal to honor MMP's contractual right to assume management of their Mountain Mike's® brand restaurant upon expiration of the controlling franchise agreement. To the extent the Court deems a hearing is required, MMP requests that it be set for Thursday, **December 23, 2021 at 9:00 a.m.**, or a date and time soon of the Court's choosing. As described in the contemporaneously-filed Declaration of Ryan C. Bykerk, MMP provided reasonable notice to the Defendants of this hearing date and time, and will provide further notice of any further hearing date and time the Court may select.

As background, the Viscuso Defendants are long time franchisees operating a franchised Mountain Mike's® Pizza restaurant at 2222 Francisco Drive, Suite 100, El Dorado Hills, California 95762 ("Premises"), a location they lease from DC Management, LLC. They operate the restaurant pursuant to a franchise agreement with MMP that, after fifteen years, will expire on January 2, 2022. The franchise agreement grants MMP certain rights when it expires. As relevant here, it grants MMP the option to purchase the restaurant at fair market value and assume the lease for the Premises—indeed, the Lease, which MMP reviewed and approved, expressly allows for this transfer with or without DC Management, LLC's consent. It also grants MMP the right to assume management of the restaurant when the franchise agreement expires if MMP is considering whether to exercise its purchase rights. MMP informed Defendants of its intent to exercise its purchase rights on November 18, 2021.

Instead of complying with these provisions of the franchise agreement, Defendants set out to harm MMP in two ways. **First**, Defendants infringed MMP's trademarks and trade dress by selling products under the Viscuso Defendants' new business name—the "Viscuso's Pizza & Draft House"—on DoorDash for customers to pick up *from the Mountain Mike's® brand restaurant at the Premises*. In addition, the supposed "Viscuso's" menu copied the Mountain Mike's® menu, offering Mountain

Mike's® product offerings, such as the "Half Dome Sandwich," "Cliff Hanger," and selling pizzas using Mountain Mike's® unique size conventions (small, medium, large, and "mountain" size), as well as copying, word for word, product descriptions from the Mountain Mike's® menu ("legendary crispy, curly pepperoni on our classic red sauce"). These acts were and are calculated to confuse customers into believing the new "Viscuso's Pizza & Draft House" is in some way connected with, sponsored by or affiliated with the well-established Mountain Mike's® Pizza restaurant, to appropriate the goodwill of MMP's well-established Mountain Mike's® Pizza restaurant brand. Defendants' conduct is causing and, if not enjoined, will continue to cause irreparable harm to MMP.

**Second,** the Viscuso Defendants expressly refuse to permit MMP to enter the Premises and assume the restaurant's management on their behalf when the franchise agreement expires—violating MMP's right to assume management of the restaurant. Instead, the Viscuso Defendants have advertised their intent to operate their competing "Viscuso's Pizza & Draft House" business on the Premises in January 2022, stated their interest in selling their Mountain Mike's® signage, and engaged in the above-described willful trademark and trade dress infringement to appropriate MMP's goodwill and associate it with the Premises they refuse to turn over to MMP.

Accordingly, MMP was forced to file this action to pursue its trademark and trade dress claims before this Court and ask this Court to preserve the status quo of an operational Mountain Mike's® restaurant  on the Premises pending arbitration on the merits of MMP's contract claims concerning its right to purchase the restaurant.[1] Specifically, it seeks:

    (a)    An order that the Defendants, their officers, directors, employees, attorneys, and all persons and/or entities acting for, with, by, through, or in concert with it, be enjoined preliminarily and permanently from:

---

[1] The Franchise Agreement calls for the Viscuso Defendants to arbitrate on the merits all claims except those relating to MMP's trademarks in certain circumstances, and in all cases, MMP's right to seek temporary restraining orders and temporary or preliminary injunctive relief. MMP has concurrently submitted the merits of its claims against the Viscuso Defendants to the American Arbitration Association for resolution pursuant to the Franchise Agreement. (Declaration of Steven Adyani, Ex. 11, Franchise Agreement, Section 17.) MMP's claims against DC Management, LLC are not subject to arbitration.

(i)     using the Mountain Mike's® Marks (defined below), or any other logo, device, trade dress, domain name or word mark that is a colorable imitation of, or is confusingly similar to, the Mountain Mike's® Marks or any of them, in connection with the advertising, distribution, marketing, offering for sale, or sale of any product neither originating from nor authorized by MMP;

(ii)    representing in any manner or by any method whatsoever, that goods, services or other products provided by the Viscuso Defendants are sponsored, approved, authorized by or originate from MMP or otherwise taking any action likely to cause confusion, mistake or deception as to the origin, approval, sponsorship or certification of such goods or services;

(iii)   infringing, diluting, and/or tarnishing the distinctive quality of the Marks, or any of them;

(iv)    unfairly competing with MMP in any manner; and

(b)     An order that upon expiration of the Franchise Agreement on January 2, 2022, the Defendants shall permit MMP to enter the Premises and assume the Restaurant's management on the Viscuso Defendants' behalf in accordance with Section 14.C. of the Franchise Agreement until a final, non-appealable decision on the merits in arbitration is reached or the parties seek modification of the order.

MMP further requests that the Court take judicial notice of its trademark registrations attached as Exhibits 2 through 7 of the Declaration of Steven Adyani, and its current applications, attached as Exhibits 8 through 9, pursuant to Federal Rule of Evidence 201(b)(2) on the grounds that filings with the United States Patent and Trademark Office can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.

In addition, MMP requests that this Court waive the requirement that MMP post a bond in conjunction with the granting of the relief requested herein.

The Eastern District Temporary Restraining Order Checklist is attached.

PLAINTIFF'S *EX PARTE* MOTION FOR T.R.O. AND O.S.C.

This Motion is based on this Motion, the attached Memorandum of Points and Authorities, the Declarations of Ed D'Amico, Steven Adyani, and Ryan C. Bykerk, all other pleadings and papers on file in this Action, and any other evidence and oral argument as may be presented at the time of the hearing.

Respectfully submitted,

Dated:  December 21, 2021                              GREENBERG TRAURIG, LLP


By:  */s/ Ryan C. Bykerk*
                                                                      Brent Sokol
                                                                      Ryan C. Bykerk
                                                                      Attorneys for Plaintiff
                                                                      MOUNTAIN MIKE'S PIZZA, LLC

PLAINTIFF'S *EX PARTE* MOTION FOR T.R.O. AND O.S.C.

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ........................................................................................................ 1

II.  STATEMENT OF FACTS ........................................................................................ 3

    A.   MMP's Valuable Marks ................................................................................ 3

    B.   The parties' relationship and Franchise Agreement .................................... 5

    C.   The Viscuso Defendants operate the Restaurant in El Dorado Hills. .......... 5

    D.   The Viscuso Defendants decide to let the Franchise Agreement expire, which will trigger MMP's rights to assume management and purchase the Restaurant and assume the Lease ........................................................................................... 6

    E.   The Viscuso Defendants refuse to vacate the premises. .............................. 7

    F.   The Viscuso Defendants Violate MMP's Mountain Mike's® Marks and Trade Dress. ......................................................................................................... 9

III. LEGAL DISCUSSION ............................................................................................. 9

    A.   The Court should enjoin the Viscuso Defendants' Trademark Infringement. ................. 10

        1.   MMP will prevail on its Trademark and Trade Dress Infringement Claims. ...... 10

            a.   The strength of MMP's Marks tends to prove consumer confusion. ....... 12

            b.   The proximity of the goods tends to show consumer confusion. ........... 12

            c.   The Marks and trade dress are identical and likely to confuse consumers. ....... 13

            d.   Evidence of Confusion exists. ............................................................. 13

            e.   Same channels ................................................................................... 13

            f.   The types of goods or services and purchaser care show a likelihood of confusion. ................................................................. 13

            g.   The Vicuso Defendants' intent shows likelihood of confusion ............... 14

            h.   The likelihood of expansion is neutral in this case. ............................... 14

        2.   MMP will suffer irreparable harm if the injunction is not granted. ................ 14

        3.   The balance of equities favors MMP over the Viscuso Defendants. ................ 16

        4.   The public interest is served by granting immediate injunctive relief. ............. 17

    B.   The Court should enter an injunction to maintain the status quo pending arbitration. ............................................................................................... 17

        1.   MMP will prevail on its contract claims against the Viscuso Defendants. ......... 18

        2.   MMP will suffer irreparable harm in the absence of preliminary relief. ............ 20

        3.   The balance of hardships entirely favors MMP. ......................................... 21

        4.   Granting the Injunction to Retain the Status Quo is in the Interest of the Public ....... 22

IV.  NO BOND SHOULD BE REQUIRED, OR ONLY A NOMINAL BOND SHOULD BE REQUIRED ........................................................................................................ 23

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Already, LLC v. Nike, Inc.*,
   568 U.S. 85 (2013) ........................................................................................................15

*Am. Impex Corp. v. Int'l Ace Tex, Inc.*,
   2009 U.S. Dist. LEXIS 113103 (C.D. Cal. 2009) ................................................16

*AMF, Inc. v. Sleekcraft Boats*,
   599 F.2d 341 (9th Cir. 1979) .............................................................11, 12, 13

*Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*,
   174 F.3d 1036 (9th Cir. 1999) ...........................................................10, 12, 14

*Century 21 Real Estate Corp. v. Sandlin*,
   846 F.2d 1175 (9th Cir. 1988) .................................................................10, 14

*Cherokee Inc. v. Wilson Sporting Goods Co.*,
   No. CV 15-04203 BRO, 2015 WL 3930041 (C.D. Calif. June 25, 2015) ............15

*CytoSport, Inc. v. Vital Pharm., Inc.*,
   617 F. Supp. 2d 1051 (E.D. Cal. 2009) ...............................................................17

*Dep't of Parks & Rec. v. Bazaar Del Mundo, Inc.*,
   448 F.3d 1118 (9th Cir. 2006) ...........................................................................10

*Donahue Schriber Realty Grp., Inc. v. Nu Creation Outreach*,
   232 Cal. App. 4th 1171 (2014) ...............................................................16, 20

*Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc.*
   924 F. Supp. 1559 (S.D. Cal. 1996) ...................................................................17

*E. & J. Gallo Winery v. Gallo Cattle Co.*,
   967 F.2d 1280 (9th Cir. 1992) .......................................................................11, 12

*Entrepreneur Media v. Smith*,
   279 F.3d 1135 (9th Cal. 2002) ...........................................................................14

*Heat Factory USA, Inc. v. Schawbel Techs., LLC*,
   2019 U.S. Dist. LEXIS 68964 (S.D. Cal. April 23, 2019) ...................................22

*Houdini Inc. v. Goody Baskets LLC*,
   166 F. App'x 946 (9th Cir. 2006) ......................................................................11

*IHOP Franchising, LLC v. Hameed*,
   2015 U.S. Dist. LEXIS 12021 (E.D. Cal. Feb. 2, 2015) ...............................11, 22

*Internet Specialties West, Inc. v. Milon-Digiorgio Enters.*,
   559 F.3d 985 (9th Cir. 2009) ...............................................................17

*Johnson v. Couturier*,
   572 F.3d 1067 (9th Cir. 2009) ..........................................................9, 23

*Kythera Biopharmaceuticals, Inc. v. Lithera, Inc.*,
   998 F. Supp. 2d 890 (C.D. Cal. 2014) ................................................10

*MCA Records, Inc. v. Newton-John*,
   90 Cal. App. 3d 18 (1979) .............................................................16, 20

*Paradise Hills Assocs. v. Procel*,
   235 Cal. App. 3d 1528 (1991) ............................................................21

*Park Vill. Aprt. v. Mortimer Howard Trust*,
   636 F.3d 1150 (9th Cir. 2011) .......................................................20, 21

*Playboy Enters v. Netscape Communs. Corp.*,
   354 F.3d 1020 (9th Cir. 2004) ............................................................13

*Polo Fashions, Inc. v. Dick Bruhn, Inc.*,
   793 F.2d 1132 (9th Cir. 1986) ............................................................21

*Rearden LLC v. Rearden Commerce, Inc.*,
   683 F.3d 1190 (9th Cir. 2012) ............................................................11

*Res. Lenders, Inc. v. Source Solutions, Inc.*,
   404 F. Supp. 2d 1232 (E.D. Cal. 2005).............................................16

*Richman v. Hartley*,
   224 Cal. App. 4th 1182 (2014) ..........................................................18

*Sierra On-Line, Inc. v. Phoenix Software, Inc.*,
   739 F.2d 1415 (9th Cir. 1984) ............................................................15

*Stockton v. Newman*,
   148 Cal. App. 2d 558 (1957) .......................................................20, 21

*Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*,
   240 F.3d 832 (9th Cir. 2001) ................................................................9

*Ticketmaster L.L.C. v. RMG Techs., Inc.*,
   507 F. Supp. 2d 1096 (C.D. Cal. 2007) .............................................23

*Vision Sports, Inc. v. Melville Corp.*,
   888 F.2d 609 (9th Cir. 1989) ..............................................................14

*Warsaw v. Chicago Metallic Ceilings, Inc.*,
   35 Cal. 3d 564 (1984) ...................................................................17, 22

PLAINTIFF'S *EX PARTE* MOTION FOR T.R.O. AND O.S.C.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Winter v. Natural Res. Defense Council, Inc.*,
   555 U.S. 7, 129 S. Ct. 365 (2008) ...................................................................9

**Statutes**

15 U.S.C. §§ 1057(b) .......................................................................................10

15 U.S.C. § 1114 ..............................................................................................10

15 U.S.C. § 1114(1) ..........................................................................................10

15 U.S.C. § 1116(a) ..........................................................................................15

15 U.S.C. § 1125 ..............................................................................................10

15 U.S.C. § 1125(a) ..........................................................................................10

Cal. Civ. Proc. Code § 526(a)(5) .....................................................................21

Lanham Act Section 32(1) ...............................................................................10

Lanham Act Section 43(a) ...............................................................................10

Trademark Modernization Act of 2020 ............................................................15

U.S. Code § 1115 .............................................................................................10

**Other Authorities**

Fed. R. Evid. 201(b)(2) ....................................................................................11

PLAINTIFF'S *EX PARTE* MOTION FOR T.R.O. AND O.S.C.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Mountain Mike's Pizza, LLC ("MMP") is the owner of the family of Mountain Mike's® brand and trademarks. MMP uses the Mountain Mike's® Marks in connection with restaurant services including the sale of pizza and related menu items. SV Adventures, Salvatore Viscuso and Sandra Viscuso ("the Viscuso Defendants") are current franchisees, who are permitted to use the marks pursuant to a franchise agreement ("Franchise Agreement"). The Viscuso Defendants elected not to renew their Franchise Agreement, and it will expire on January 2, 2022. But rather than comply with law and their duties under the Franchise Agreement, the Viscuso Defendants have engaged in a pattern of conduct calculated to deprive MMP of its rights and do it irreparable harm, in two ways.

**First**, MMP has uncovered the Viscuso Defendants' infringement of its registered trademarks and common law rights thereto along with infringement of MMP's trade dress. Specifically, the Viscuso Defendants have already begun selling products under the "Viscuso's Pizza & Draft House" name on app-based food-ordering platforms *from the Mountain Mike's® brand restaurant* at the Premises, in an attempt to confuse customers into thinking that Viscuso's Pizza & Draft House is in some way connected with, sponsored by or affiliated with the well-established Mountain Mike's® Pizza restaurant. To further identify with Mountain Mike's® restaurants, the Viscuso Defendants' online menu largely copies the MMP menu, offering products such as the "Half Dome Sandwich," and "Cliff Hanger" and selling pizzas using MMP's unique size conventions (small, medium, large, and "mountain" size), as well as copying, word for word, product descriptions from the MMP menu (e.g., "legendary crispy, curly pepperoni on our classic red sauce"[2]). Consumers can also purchase MMP products through DoorDash and other app-based food-ordering platforms. By using the Mountain Mike's® location as base for their new Viscuso's Pizza & Draft House and offering the same products, the Viscuso Defendants are trying to trade on MMP's goodwill. Consumers will be misled that Viscuso's Pizza & Draft House is in some way connected with, sponsored by or affiliated with the well-established Mountain Mike's® Pizza restaurant. If allowed to continue, the Viscuso Defendants' conduct will

---

[2] The use of the word "legendary" for a brand new restaurant is further evidence the Viscuso Defendants are trying to trade on the significant goodwill owned by MMP.

inevitably cause marketplace confusion and irreparable harm to MMP through lost customers and good-will. Given this irreparable harm, MMP respectfully requests that the Court preliminarily enjoin the Viscuso Defendants until the Court or other appropriate adjudicative body can hear the case.

**Second**, the Viscuso Defendants have stated that they intend to breach their contractual duties under the Franchise Agreement. The Viscuso Defendants operate their MMP franchise at 2222 Francisco Drive, Suite 100, El Dorado Hills, California 95762 (the "Premises"). When the Franchise Agreement expires, it grants franchisor MMP the express right to (1) exercise its option to purchase the restaurant at fair market value and take over the lease, and (2) assume management of the Restaurant if it is deciding whether to exercise that right. These two rights are intended to prevent irreparable harm to MMP. Initially, they are intended to protect MMP's investment in the location-selection process. Moreover, they protect MMP's brand equity and market share by, among other things, ensuring continuous service to customers, avoiding customer confusion that might result from a location change or a franchisee opening a competing restaurant in the same location, and ensuring an orderly transition for franchisees leaving the system. In short, the right to purchase a franchisee's restaurant and leasehold is a critical term, the breach of which causes irreparable harm to its consumer goodwill at the location.

Despite MMP's express right to purchase the restaurant and assume the lease, the Viscuso Defendants refused to comply. To the contrary, they have advertised that Viscuso's Pizza & Draft House is "coming January 2022" to the Premises, inquired about selling Mountain Mike's® signs, and started selling products under their new business name to customers out of the Premises. They also claim to have negotiated a lease amendment with DC Management, LLC that would allow them to operate at the Premises under their new name. In short, the Viscuso Defendants have unequivocally demonstrated that they will not comply with their critical covenants designed to preserve MMP's goodwill associated with the Restaurant and thereby render MMP's right to purchase the Restaurant meaningless. Accordingly, MMP has been forced to file this action, as well as a complaint in arbitration, and bring this Motion for a temporary restraining order to prevent severe irreparable harm.

## II.   STATEMENT OF FACTS

A.   **MMP's Valuable Marks**

MMP is a franchisor of Mountain Mike's® Pizza Restaurants that feature pizza but also sell other food products. As relevant here, MMP operates using the following marks along with their common law rights (collectively referred to herein as the "Mountain Mike's® Marks"):

a.   U.S. Reg. No. 1,716,963 (incontestable) for the mark MOUNTAIN MIKE'S for "restaurant services," in International Class 42 with a registration date of September 15, 1992;

b.   U.S. Reg. No. 1,716,962 (incontestable) for MOUNTAIN MIKE'S (& Design) mark below for "restaurant services," in International Class 42 with a registration date of September 15, 1992. These registrations (Nos. 1,716,963 and 1,716,962) have been renewed twice, most recently in 2012. (*See* Declaration of Steven Adyani ("Adyani Decl."), ¶ 4 (a), Ex. 2 and 3.);



c.   U.S. Reg. No. 2,004,536 (incontestable) for the MOUNTAIN MIKE'S (& Design) for "restaurant services," in International Class 42 with a registration date of October 1, 1996. MMP (and/or its predecessor, COAC) has/have renewed this Mark twice, most recently in 2016. (*Id.*, ¶ 4 (b), Ex. 4);



d.   U.S. Reg. No. 3,467,126 (incontestable) for the MOUNTAIN MIKE'S mark (& Design) for "restaurant services," in International Class 43 with a registration date of July 15, 2008. (*Id.*, ¶ 4 (d), Ex. 6.);

PLAINTIFF'S *EX PARTE* MOTION FOR T.R.O. AND O.S.C.

e.      U.S. Reg. No. 2,174,312 (incontestable) for the PIZZA THE WAY IT OUGHTA BE® mark for "restaurant," in International Class 42 with a registration date of July 21, 2008. This registration was renewed on January 16, 2009. (*Id.*, ¶ 4 (c), Ex. 5.);

f.      U.S. Reg. No. 4,703,140 (incontestable) for the Design mark below for "restaurant services," in International Class 43 with a registration date of March 17, 2015. (*Id.*, ¶ 4 (e), Ex. 7.);



g.      Ser. No. 88/911,537 for MOUNTAIN MIKE'S PIZZA (& Design) mark below for "Restaurant franchising, namely, offering business management assistance in the establishment and/or operation of restaurants; On-line ordering services in the field of restaurant take-out and delivery," in International Class 35 and "Restaurant services; Restaurant services, including sit-down service of food and take-out restaurant services; Restaurants featuring home delivery; Pizza parlors," in International Class 43 with a filing date of May 12, 2020. (*Id.*, ¶ 6 (a), Ex. 8.); and



h.      Ser. No. 90/639,262 for MOUNTAIN REWARDS mark for "pizza parlor services, namely, dine-in, take-out delivery, featuring a diners' rewards program," in International Class 43 with a filing date of April 12, 2021. (*Id.*, ¶ 6 (b), Ex. 9.)

In addition to these registered marks, MMP owns the "Mountain Mike's®" trade dress, which includes the Mountain green color and/or Mountain red color, is used in connection with the foregoing Mountain Mike's® Marks and products and services at Mountain Mike's® locations. (*Id.*, ¶ 7, Ex. 10.)

**B.**   **The parties' relationship and Franchise Agreement**

On January 3, 2007, MMP predecessor Concept Acquisitions, LLC ("COAC") entered into a franchise agreement with Khachatur and Rita Galstyan to operate a Mountain Mike's Pizza restaurant at 2201 Francisco Drive, Suite 110, El Dorado Hills, CA 95762. (Adyani Decl., ¶ 8, Ex. 11, Franchise Agreement.) On April 23, 2008, the Galstyans assigned their franchise rights to SV Adventures and Salvatore and Sandi Viscuso signed an Assignment and Assumption Agreement pursuant to which SV Adventures assumed all of the Galstyan's contractual obligations under the Franchise Agreement. (*Id.*, ¶ 9, Ex. 12, Assignment and Assumption Agreement.) At the same time, Salvatore and Sandra Viscuso signed a Guaranty and Assumption of Obligations (the "Guaranty") by which they "personally and unconditionally" guaranteed SV Adventures' performance under the Franchise Agreement. (*Id.*, ¶ 10, Ex. 13, Guaranty.) On April 4, 2017, MMP purchased the assets of Concept Acquisitions, LLC and assumed all rights and obligations under the Franchise Agreement and the Guaranty. (*Id.*, ¶ 11, Ex. 14.)

**C.**   **The Viscuso Defendants operate the Restaurant in El Dorado Hills.**

The Viscuso Defendants operated the Restaurant continuously from the date they assumed ownership until present. (Adyani Decl., ¶ 12.) For the first ten years, they operated the Restaurant at its original location on 2201 Francisco Drive, Suite 110. Then, in April 2017, they moved the Restaurant across the street to the Premises at 2222 Francisco Drive, Suite 100. (Bykerk Decl., Ex. 26, December 9, 2021 Letter.) They entered into a new 10-year lease with DC Management, LLC for that location giving them the right to occupy the Premises until October 31, 2027. (*Id.*, Ex. 27, Standard Multi-Tenant Shopping Center Lease – Net ("Lease") at p. 1; Addendum No. 1 to Lease, § 51.)

In connection with the move, the Viscuso Defendants presented the Lease to MMP. (Bykerk Decl., Ex. 26, December 9 Letter at p. 2.) The Lease contained the provisions important to MMP. Specifically, the Lease allows SV Adventures to assign its interest in the Lease to MMP. (*Id.*, Ex. 27 Lease, p. 11 of 19, § 12.1(a); Addendum No. 2, p. 2, § 12.1(h).) In fact, SV Adventures may do so *without the lessor's consent*. The agreement provides:

> Lessee shall be allowed to Assign the Lease to another franchisee who will operate with the same Agreed Trade Name [i.e., Mountain Mike's Pizza] . . . as a Permitted Transfer so long as Assignee agrees to accept full responsibility and obligations as Lessee under the Lease subject to

Landlords [sic] review and approval of full financial disclosure, and the
maintenance of the guaranty as set with this lease.

(Bykerk Decl., Ex. 27 Addendum No. 2 to Lease, p. 2, § 12.1(h) (emphasis added).) All involved
understood that the Lease could be transferred to MMP, to allow a Mountain Mike's® restaurant to
continue operating in the Premises. Accordingly, MMP had no objection to the move or the new Lease,
and the Viscuso Defendants operated their franchise at the Premises as before, from April 2017 to
present. (Adyani Decl., ¶ 13.)

Restaurant location is important. MMP is intimately involved in selecting franchise restaurant
locations, which are unique by nature. (Adyani Decl, ¶ 29; *id.*, Ex. 17.) Each location is part of a plan,
and MMP grants its franchisees exclusive rights to advertise in the geographic areas surrounding each
location. (Adyani Decl. ¶ 30.) MMP's contractual right to purchase franchisee restaurants when they
expire is intended to protect MMP's investment in the location-selection process. (*Id.*) It also protects
the Mountain Mike's® brand by, among other things, ensuring continuous service to customers,
avoiding customer confusion that might result from a location change, and ensuring an orderly transition
for franchisees leaving the system. (*Id.*, ¶ 31.) In short, the right to purchase Franchisees' restaurant and
their leasehold is a critical term.

**D.** **The Viscuso Defendants decide to let the Franchise Agreement expire, which will trigger
MMP's rights to assume management and purchase the Restaurant and assume the Lease.**

The Franchise Agreement's fifteen-year term expires on January 2, 2022. (Adyani Decl., Ex. 11,
§ 1.D.) When the Franchise Agreement expires, the parties have certain options set forth in the
agreement. The franchisee may acquire a successor franchise for an additional term, or it may let the
agreement expire without renewal. (*Id.* §§ 13, 15.) If the franchisee lets the agreement expire, Section 15
of the Franchise Agreement provides that MMP has the option to purchase the Restaurant and leasehold
right. Specifically, the Franchise Agreement provides:

> Upon . . . expiration of this Agreement . . ., we have the option, exercisable
> by giving you written notice within sixty (60) days from the date of the
> termination or expiration, to purchase the RESTAURANT from you,
> including the leasehold rights to the Premises. . . .

(*Id.*, § 15.E.1.) It further provides that:

> You agree at our election:
> (a)      to assign your leasehold interest in the Premises to us; or

   (b)  to enter into a sublease for the remainder of the Lease term on the same terms (including renewal options) as the Lease.

(*Id.*, § 15.E.2.)

  On August 3, 2021, the Viscusos Defendants sent a letter to MMP stating their intent not to renew the Franchise Agreement when it expires on January 2, 2022. (Adyani Decl., ¶ 16, Ex. 19.) Accordingly, on November 18, 2021 MMP sent a Notice of Non-Renewal and Intent to Exercise Purchase Option. (Bykerk Decl., Ex. 25.) Although that letter need not have been sent until after the Franchise Agreement expired, it provided advance notice to the Viscuso Defendants that MMP intends to exercise its Section 15.E. rights to purchase the Restaurant and assume the leasehold. (*Id.*) In the letter, MMP described the appraisal process set forth in the Franchise Agreement and asked that SV Adventures provide exact copies of federal and state income taxes for the 2020 calendar year and annual profit and loss statements to help set a fair market value. (*Id.*)

**E.**  **The Viscuso Defendants refuse to vacate the premises**.

  Thereafter, MMP began receiving hints that the Viscuso Defendants might refuse to perform their duties and refuse to surrender the property. On November 19, 2021, MMP discovered that Salvatore Viscuso had mentioned an intent to sell Mountain Mike's® signage to other franchisees. (Declaration of Ed D'Amico ("D'Amico Decl."), ¶ 3.) The next day, MMP discovered that the Viscuso Defendants were displaying signage at the restaurant advertising that a new restaurant—"Viscuso's Pizza & Draft House"—would be coming to that location in January 2022.



(D'Amico Decl., Ex. 1.) Indeed, Salvatore Viscuso told MMP the the Viscuso Defendants had already negotiated an amendment to the Lease purporting to allow them to operate in the Premises under the new "Viscusos Pizza & Draft House" name starting in January 2022. (Adyani Decl., ¶ 15.)

Still, MMP had provided advance notice to the Viscuso Defendants of its intent to purchase the Restaurant and assume the Lease, and it remained hopeful that, after reviewing the November 18 letter, the Viscuso Defendants would reverse course. On December 9, 2021, the Viscuso Defendants responded. But rather than comply with their duties under the Franchise Agreement, the Viscuso Defendants stated that they did not intend to perform, would not sell the restaurant, and would not assign the Lease. (Bykerk Decl., Ex. 26.)

MMP responded on December 13, urging the Viscuso Defendants to reconsider. (*Id.*, Ex. 28.) The Viscuso Defendants responded on December 16, 2021 and, unfortunately, only confirmed that they would not honor their contractual duties. (*Id.*, Ex. 29.)

PLAINTIFF'S *EX PARTE* MOTION FOR T.R.O. AND O.S.C.

**F.**    <u>**The Viscuso Defendants Violate MMP's Mountain Mike's® Marks and Trade Dress**</u>.

While engaged in the foregoing meet and confer, on December 16, MMP discovered for the first time that the Viscuso Defendants are ***currently operating*** their business, taking orders on smartphone application-based delivery services (e.g., DoorDash) under the name "Viscusos Pizza & Draft House," while operating a Mountain Mike's® restaurant, and using MMP's Mountain Mike's® Marks and MMP's trade dress. Specifically, the Viscuso Defendants copied the MMP menu, offering for sale products from Mountain Mike's® brand restaurants, such as the "Half Dome Sandwich," "Cliff Hanger Sandwich" and selling pizzas using Mountain Mike's® unique size conventions (small, medium, large, and "mountain" size), as well as copying, word for word, product descriptions from the Mountain Mike's® menu. (Adyani Decl., at ¶¶ 20-24; Exs. 21-24.) These same products are available for purchase from MMP through the same app-based food-ordering platforms. (*Id.* ¶ 21.)

To protect its interests, and pursuant to the procedures set forth in the Franchise Agreement, MMP filed a complaint in arbitration with the AAA per the terms of the parties' agreement. (Adyani Decl., Ex. 11, Franchise Agreement § 17(F).) By this Motion, MMP asks this Court to issue and order enjoining and restraining the Viscuso Defendants from violating MMP's Mountain Mike's® Marks and requiring them and Defendant DC Management, LLC to maintain the status quo by allowing MMP to assume management of the Restaurant.

## III.    <u>LEGAL DISCUSSION</u>

The standard for obtaining a temporary restraining order and a preliminary injunction applies the same standards. *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001).When deciding whether to grant a request for a temporary restraining order or preliminary injunctive relief, a trial court evaluates four factors: (1) a substantial likelihood of success on the merits of the underlying case; (2) the plaintiff will suffer irreparable harm in the absence of an injunction; (3) the harm suffered by the plaintiff in the absence of an injunction would exceed the harm suffered by the opposing party if the injunction issued; and (4) an injunction  is in the public interest. *Johnson v. Couturier*, 572 F.3d 1067, 1078 (9th Cir. 2009) (*quoting Winter v. Natural Res. Defense Council, Inc*., 555 U.S. 7, 20, 129 S. Ct. 365, 374 (2008)).

For the reasons set forth below, the four factors militate in favor of granting injunctive relief both to (A) end the Viscuso Defendants' trademark infringement, and (B) maintain the status quo to keep the restaurant as an operational Mountain Mike's® Pizza Restaurant.

**A.** **The Court should enjoin the Viscuso Defendants' Trademark Infringement.**

    **1.** **MMP will prevail on its Trademark and Trade Dress Infringement Claims.**

Section 32(1) of the Lanham Act makes it unlawful to use a "reproduction, counterfeit, copy, or colorable imitation" of a registered mark in such a way as "is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1). Similarly, Section 43(a) of the Lanham Act prohibits the use of a mark that "is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person." 15 U.S.C. § 1125(a). To succeed on a trademark infringement claim under 15. U.S.C. § 1114(1), MMP must establish (1) that it has a valid and protectable trademark, and (2) the defendant's use of the mark is "likely to cause consumer confusion." *Dep't of Parks & Rec. v. Bazaar Del Mundo, Inc.*, 448 F.3d 1118, 1124 (9th Cir. 2006); *see also Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1178 (9th Cir. 1988) (the "'ultimate test' for unfair competition is exactly the same as for trademark infringement: 'whether the public is likely to be deceived or confused by the similarity of the marks'"). Additionally, a claim "under 15 U.S.C. § 1125 requires proof of the same elements as a claim for trademark infringement under 15 U.S.C. § 1114*." Kythera Biopharmaceuticals, Inc. v. Lithera, Inc*., 998 F. Supp. 2d 890, 897 (C.D. Cal. 2014).

**First**, MMP can show it owns valid and protectable trademarks in the Mountain Mike's® Marks. MMP's federal registrations of these Marks are prima facie evidence of its ownership of the marks. 15 U.S.C. §§ 1057(b) ("registration of a mark upon the principal register [is] prima facie evidence of the validity of the registered mark . . . of the registration of the mark . . . ownership of the mark and . . . exclusive right to use the registered mark"); 15 U.S. Code § 1115; *See Also Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp*., 174 F.3d 1036, 1047 (9th Cir. 1999). MMP's Marks are on file with the United States Patent and Trademark Office Principal Register. (*See* Part II.A., *supra*; *see also* Adyani Decl., Exs. 2 to 7.)

MMP is the exclusive owner and licensee of the Mountain Mike's® Marks. (Adyani Decl., ¶ 5.) MMP has used the Mountain Mike's® Marks to identify its good, services, and brand. The Viscuso Defendants would have no basis to challenge the validity of these Marks. If a mark's validity is not in dispute, then a federally registered trademark is subject to judicial notice, and MMP hereby requests that the Court take such notice. Fed. R. Evid. 201(b)(2). Further, even if the Viscuso Defendants did dispute the validity, district courts have discretion to consider inadmissible evidence when adjudicating whether to grant a preliminary injunction or temporary restraining order. *Houdini Inc. v. Goody Baskets LLC*, 166 F. App'x 946, 947 (9th Cir. 2006). There can be no legitimate dispute that MMP has a valid and protectable trademark.

**Second**, MMP will be able to show there is a strong likelihood that the Viscuso Defendants' conduct will cause consumers to believe that Viscuso's Pizza & Draft House is connected with, sponsored by or affiliated with MMP. A likelihood of confusion exists when "a reasonably prudent consumer in the marketplace is likely to be confused as to the origin or source of the goods or services bearing the marks or names at issue in the case." *Rearden LLC v. Rearden Commerce, Inc.*, 683 F.3d 1190, 1209 (9th Cir. 2012). If the likelihood of confusion is more complex, then Ninth Circuit courts apply the eight *Sleekcraft* factors. *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979) ("*Sleekcraft*"). The *Sleekcraft* factors are non-exhaustive and are intended to assist a court with the probability of confusion under the totality of the circumstances. *See E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1290-91 (9th Cir. 1992).

The present circumstances are not complex enough to require the *Sleekcraft* analysis. The Viscuso Defendants have advertised their competing "Viscuso's Pizza & Draft House" products to be picked up out of a restaurant bearing MMP's Marks. Their online menu is copied and pasted from MMP. They have adopted Mountain Mike's® product names and pizza size conventions. Their efforts are plainly calculated to associate their new business and its products with MMP's famous and valuable brand and Marks in order to appropriate MMP's goodwill and prop up their new business. Consumer confusion is self-evident. It is as if, for all purposes, they are operating a competing restaurant under the MMP Mountain Mike's® Marks—a circumstance courts have held gives rise to "no question" of consumer confusion without regard to the *Sleekcraft* factors. *See, e.g., IHOP Franchising, LLC v.*

*Hameed*, 2015 U.S. Dist. LEXIS 12021 at *9-10 (E.D. Cal. Feb. 2, 2015) (defendant's continued use of franchise mark at a franchise location created "no question" that there was confusion).

Although not necessary here, an analysis of the *Sleekcraft* factors cements the point.

### a.   The strength of MMP's Marks tends to prove consumer confusion.

MMP's Marks are strong because they are (1) arbitrary and distinctive, and (2) commercially strong. First, MMP's Marks are arbitrary because the terms "mountain" and "mike" and the images of a pickax, star, and mountain range are neither descriptive nor generic for the goods and services MMP provides, namely restaurant and pizza parlor services. As such, MMP's Marks are inherently distinctive and should be afforded protection. *Sleekcraft*, 599 F.2d at 349 ("an arbitrary or fanciful mark . . . will be afforded the widest ambit of protection from infringing uses.") Second, they have commercial strength. A mark's commercial strength look at a mark's "actual marketplace recognition." *Brookfield Comm'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1058 (9th Cir. 1999). MMP has over 240 locations, many in Northern California (where this case arises), and it has spent millions of dollars in marketing, advertising, and promoting its goods and services under the MMP Marks, some of which have been registered for nearly thirty-nine years. (Adyani Decl., ¶ 4, Exs. 2 to 7.) MMP's Mountain Mike's® Marks are commercially strong.

### b.   The proximity of the goods tends to show consumer confusion.

When goods or services are either "related or complementary, the danger of consumer confusion is heightened." *E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1291 (9th Cir. 1992); *See also Sleekcraft*, 599 F.2d at 350 ("For related goods, the danger presented is that the public will mistakenly assume there is an association between the producers of the related goods, though no such association exists.") Here, the Viscuso Defendants are selling the exact same services and products as MMP. Indeed, they copied MMP's menu, offering the same products as Mountain Mike's® brand restaurants, such as the "Half Dome Sandwich," "Cliff Hanger Sandwich," and selling pizzas using Mountain Mike's unique size conventions (small, medium, large, and "mountain" size), as well as copying word for word, product description from the Mountain Mike's menu. This factor certainly weights in favor of MMP. (Adyani Decl., ¶¶ 20 -23, Exs. 22 and 23.)

**c.   The Marks and trade dress are identical and likely to confuse consumers.**

The Viscuso Defendants are selling items out of the Premises that still bears the Mountain Mike's® logo, insignia and trade dress, which tends to prove consumer confusion is likely.



**d.   Evidence of Confusion exists.**

Evidence of actual confusion is not necessary to establish a likelihood of confusion, *see Sleekcraft*, 599 F.2d at 353, but it exists here. Indeed, due to the Viscuso Defendants' conduct, the El Dorado Hills Chamber recently congratulated MMP for its "***rebranding* to Viscuso's Pizza & Draft House in January 2022.**" (*See insert* and Adyani Decl., Ex. 20 (emphasis added).)

**e.   Same channels**

When there are "convergent marketing channels" the likelihood of confusion increases. *Sleekcraft,* 599 F.2d at 353. Here, there are. The Viscuso Defendants are offering the same menu items in the same location to the same people using the same app-based food delivery services as MMP. This factor, too, shows a likelihood of consumer confusion.

**f.   The types of goods or services and purchaser care show a likelihood of confusion.**

The services being sold by the Viscuso Defendants are highly similar to those sold by MMP restaurants. The goods are not the exceptionally expensive products that an ordinary consumer would deliberate over for hours. *Playboy Enters v. Netscape Communs. Corp*., 354 F.3d 1020, 1028 (9th Cir. 2004) ("Consumer care for inexpensive products is expected to be quite low. Low consumer care, in

turn, increases the likelihood of confusion.") The relatively inexpensive nature of the goods and services (e.g., pizza and restaurant services) makes it likely that consumers have not and will not attempt to confirm that the Viscuso Defendants' new business is actually associated with MMP. Accordingly, consumers are likely to be confused.

> **g.    The Vicuso Defendants' intent shows likelihood of confusion**

Malicious intent is not required to find trademark infringement; however, "intent to deceive is strong evidence of a likelihood if confusion," because courts assume that "the defendant can accomplish his purpose: that is, that the public will be deceived." *Entrepreneur Media v. Smith*, 279 F.3d 1135, 1148 (9th Cal. 2002) (citations omitted). Here, the Viscuso Defendants' intent is clear. The Franchise Agreement provides that MMP's Mountain Mike's® Marks could solely be used in operation of a Mountain Mike's® brand Restaurant, and the Viscuso Defendants agreed to "use the Marks as the sole identification of your RESTAURANT." (Adyani Decl., Ex. 11 at §§ 1(C)(5), 5(A), 5(B).) Instead, the Viscuso Defendants violated these provisions and used MMP's Marks to illicitly seed and promote their new business.[3]

> **h.    The likelihood of expansion is neutral in this case.**

Because MMP and the Viscuso Defendants are competing in the same sphere—offering fast-casual food to consumers, this factor "is relatively unimportant." *Brookfield Communs., Inc. v. W. Coast Entm't Corp.,* 174 F.3d 1036, 1060 (9th Cir. 1999). This factor is therefore neutral.

In sum, seven of the *Sleekcraft* factors tend to show a likelihood of confusion and one is neutral. The likelihood of consumer confusion is clear.

> **2.    MMP will suffer irreparable harm if the injunction is not granted.**

"Injunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by the threat of continuing infringement." *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1180 (9th Cir. 1988); *see also Vision Sports, Inc. v. Melville Corp.,* 888 F.2d 609, 612 (9th Cir. 1989) (once the plaintiff establishes a likelihood of confusion, it is ordinarily presumed that the plaintiff will suffer irreparable harm if injunctive relief is

---

[3] The Viscuso Defendants cannot claim to be ignorant of the importance trademarks. In fact, they have registered their own trademarks, no doubt due to the potential value of same. (Bykerk Decl., Exs. 34 and 35.)

not granted.") The Trademark Modernization Act of 2020 further amended and restored the presumption that "[a] plaintiff seeking any such injunction shall be entitled to a rebuttable presumption of irreparable harm . . . upon a finding of likelihood of success on the merits for a violation . . . [for] a preliminary injunction of temporary restraining order." 15 U.S.C. § 1116(a).

Since MMP can establish a likelihood of success for its merits that the Viscuso Defendants are infringing its trademarks, there is a rebuttable presumption of irreparable harm. Further, MMP would be harmed by dilution of its trademark, loss of goodwill, loss of consumers, and harm to its brand that it has expended efforts and resources to uphold. Thus, MMP establishes this element and is entitled to a temporary restraining order and preliminary injunction.

The Viscuso Defendants may attempt to moot any restraining order or injunction by claiming that they have now ceased use of MMP's Marks. That does not change the result—MMP is still entitled to injunctive relief. The Ninth Circuit has observed that a plaintiff can still "suffer from consumer confusion if [defendant] resumed use of the term." *Sierra On-Line, Inc. v. Phoenix Software, Inc.,* 739 F.2d 1415, 1422 (9th Cir. 1984) (affirming order granting preliminary injunction). Rather, "to render the need for an injunction moot, 'the reform of the defendant must be irrefutably demonstrated and total'; '[i]f there is a substantial possibility that the act sought to be enjoined may be repeated, the matter is not necessarily mooted." *Cherokee Inc. v. Wilson Sporting Goods Co.,* No. CV 15-04203 BRO, 2015 WL 3930041, *3 (C.D. Calif. June 25, 2015) (citing 5 *e* § 30:11). As the Supreme Court has explained:

> [A] defendant cannot automatically moot a case simply by ending its unlawful conduct once sued. Otherwise, a defendant could engage in unlawful conduct, stop when sued to have the case declared moot, then pick up where he left off, repeating this cycle until he achieves all his unlawful ends. Given this concern, our cases have explained that 'a defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur.'

*Id.* at *3-4 (quoting, *Already, LLC v. Nike, Inc.,* 568 U.S. 85, 91 (2013)).

Here, it would be easy for the Viscuso Defendants to resume use of MMP's Marks and the Mountain Mike's® branded location for their "Viscuso's Pizza & Draft House" restaurant. Indeed, the Viscuso Defendants maintain they will operate Viscuso's Pizza & Draft House at the Premises despite the lack of a legal basis to do so and the ongoing confusion of Mountain Mike's® restaurant's

customers caused by their actions. Under the circumstances, further confusion resulting from the Viscuso Defendants' actions—which are calculated to transfer MMP's goodwill to Viscuso's Pizza & Draft House— is reasonably expected to recur. Unless a preliminary injunction issues, MMP will continue to be irreparably harmed.

### 3. The balance of equities favors MMP over the Viscuso Defendants.

"In trademark infringement and unfair competition cases, once likelihood of confusion is established, it is usually presumed that the Plaintiff will suffer irreparable harm and that the balance of hardships tips in Plaintiff's favor." *Res. Lenders, Inc. v. Source Solutions, Inc.,* 404 F. Supp. 2d 1232, 1249 (E.D. Cal. 2005). The result should be no different here. MMP has established its likelihood of success on the merits and the irreparable injury to its reputation and goodwill as a result of the Viscuso Defendants' conduct. The balance of hardship tilts in its favor.

The harm to MMP is clear. The Viscuso Defendants' conduct—advertising a competing business on the Premises and selling competing products and services at the Premises while using the Mountain Mike's® Marks will cause consumer confusion and the loss of customers, and unquantifiable damage to MMP's brand equity and goodwill. This is the picture of irreparable harm, as courts have held. *Donahue Schriber Realty Grp., Inc. v. Nu Creation Outreach*, 232 Cal. App. 4th 1171, 1185 (2014) (erosion of customer and tenant goodwill caused by the acts to be enjoined may support a finding of irreparable harm); *MCA Records, Inc. v. Newton-John*, 90 Cal. App. 3d 18, 23 (1979) (finding lost profits and lost goodwill irreparable harm; affirming trial court's grant of the preliminary injunction). By contrast, there is no harm to the Viscuso Defendants. They may continue operating a MMP brand restaurant while their Franchise Agreement is in force; they must only stop appropriating MMP's marks to benefit their competing business. In short, they are only being required to do what they already agreed to do under the Franchise Agreement. There is no irreparable harm. *See, e.g.*, *Am. Impex Corp. v. Int'l Ace Tex, Inc*., 2009 U.S. Dist. LEXIS 113103 at *7-8 (C.D. Cal. 2009) ("The balance of equities tips in Plaintiff's favor, since Plaintiff only seeks an injunction ordering Defendants to do what they have already agreed to do")

Moreover, even if the Viscuso Defendants could show some cognizable harm, the Court should disregard it given that the Viscuso Defendants' misconduct was undertaken with full knowledge of

MMP's rights and with full understanding of the consequences that might ensue under its Franchise Agreement. Under these circumstances, there is no need to balance the equities between the parties. *See Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc.* 924 F. Supp. 1559, 1574 (S.D. Cal. 1996) ("Where the only hardship that the defendant will suffer is lost profits from an activity which has been shown to be infringing, such an argument in deference merits little consideration.); *Warsaw v. Chicago Metallic Ceilings, Inc.*, 35 Cal. 3d 564, 573 (1984) (balancing of the equities is not appropriate "where it appears that the defendant acted with full knowledge of complainant's rights and with an understanding of the consequences which might ensue"). As such, the balance of hardships strongly favors granting the requested injunctive relief.

### 4. <u>The public interest is served by granting immediate injunctive relief.</u>

It is in the public interest to grant this injunctive relief because it is the right of the public not to be deceived or confused. *See Internet Specialties West, Inc. v. Milon-Digiorgio Enters.,* 559 F.3d 985, 993 (9th Cir. 2009) ("The public has an interest in avoiding confusion between two companies' products."); *see also CytoSport, Inc. v. Vital Pharm., Inc.*, 617 F. Supp. 2d 1051, 1081 (E.D. Cal. 2009) ("When a trademark is said to have been infringed, what is actually infringed is the right of the public to be free of confusion and the synonymous right of the trademark owner to control his products' reputation.") (citation omitted). Here, the Viscuso Defendants have, and are likely to continue to injure the public by infringing on MMP's Mountain Mike's® Marks and causing consumer confusion. Indeed, the public has already been confused, and is likely to continue to be confused by the Viscuso Defendants' conduct if they are not enjoined.

In sum, each of the four factors is met. The Court should enjoin the Viscuso Defendants' trademark infringement, dilution, and false association.

### B. <u>The Court should enter an injunction to maintain the status quo pending arbitration.</u>

MMP further requests that this Court issue an order preserving the status quo until a decision on the merits and ordering that upon expiration of the Franchise Agreement on January 2, 2022, the Defendants shall permit Plaintiff to enter the Premises and assume the Restaurant's management until a final, unappealable decision on the merits in arbitration is reached or the parties seek modification of the order. The same four factors set forth above apply here, and as before, each is satisfied.

1.   <u>**MMP will prevail on its contract claims against the Viscuso Defendants**</u>.

MMP asserts contract claims against the Viscuso Defendants for breach of contract (specific performance and damages), breach of guaranty, and declaratory judgment. Generally, each is founded on a breach of contract theory. "To prevail on a cause of action for breach of contract, the plaintiff must prove (1) the contract, (2) the plaintiff's performance of the contract or excuse for nonperformance, (3) the defendant's breach, and (4) the resulting damage to the plaintiff." *Richman v. Hartley*, 224 Cal. App. 4th 1182, 1186 (2014). MMP can do so here.

**First**, the Franchise Agreement and its amendments constitute a contract between MMP and SV Adventures. (Adyani Decl., Ex. 11.) Section 15.E of the Franchise Agreement grants MMP the right to purchase the Restaurant, along with the leasehold right to the Premises in which the Restaurant is operated, exercisable by providing notice within sixty days of the expiration.

> (1) <u>Exercise of Option</u>. Upon . . . expiration of this Agreement . . ., we have the option, exercisable by giving you written notice within sixty (60) days from the date of termination or expiration, to purchase the Restaurant from you, including the leasehold rights to the Premises  . . . We will be entitled to all customary warranties and representations in our asset purchase, including, without limitation, representations and warranties as to ownership and condition of and title to assets; liens and encumbrances on assets; validity of contracts and agreements; and liabilities affecting the assets, contingent or otherwise.

> (2) <u>Leasehold Rights</u>. You agree at our election: (a) to assign your leasehold interest in the Premises to us; or (ii) to enter into a sublease for the remainder of the Lease term on the same terms (including renewal options) as the Lease.

(*Id.*, Ex. 11, § 15.E.)

Section 14.C. of the Franchise Agreement provides that when the Franchise Agreement expires, MMP has the right to assume management of the Restaurant while MMP considers whether to exercise its option to purchase the Restaurant:

> We have the right (but not the obligation), under the circumstances described below, to enter the Premises and assume the RESTAURANT's management on your behalf for the period of time we deem appropriate. . . .

> We may assume the management of the RESTAURANT under the following circumstances:

18

(1) if you abandon or fail actively to operate the RESTAURANT;

(2) if you fail to comply with any provision of this Agreement or any System Standard and do not cure the failure within the time period we specify in our notice to you; or

(3) if this Agreement expires or is terminated and we are deciding whether to exercise our option to purchase the RESTAURANT under Section 15.E. below.

(*Id.*., Ex. 11, § 14.C.)

In addition, the Guaranty is a valid contact between MMP and Salvatory and Sandra Viscuso. (*Id.*, Ex. 13.) That contract provides that the Viscusos will be personally liability for any failure to SV Adventures to comply with any term of the Franchise Agreement. Specifically, they agreed to be:

> personally bound by, and personally liable for the breach of, each and every provision in the [Franchise] Agreement . . . including (i) monetary obligations, (ii) obligations to take or refrain from taking specific actions and to engage or refrain from engaging in specific activities, including, but not limited to, the non-competition, confidentiality, and transfer requirements, and (iii) the enforcement and other provision in Section 17 and 18 of the [Franchise] Agreement.

(Adyani Decl., Ex. 13.) In short, valid contracts exist, with clear terms.

**Second**, MMP has fully performed its obligations under the Franchise Agreement. In fact, it has gone over and above its contractual duties, providing advance notice of its intent to purchase the Restaurant and assume management. (Bykerk Decl., Ex. 25.)

**Third**, Viscuso Defendants have breached the agreement. They have already stated they do not intend to turn over the property, stated their intent to sell Mountain Mike's® signage, advertised their intent to operate a competing business in Premises in breach of the Franchise Agreement starting in January 2022, and have already begun selling products to customers out of the Premises as "Viscusos Pizza & Draft House," despite the currently-operative Franchise Agreement. (*See* Adyani Decl., ¶¶ 20 - 23, Ex. 21 to 24.) These acts constitute an anticipatory breach and breach of their duties to allow MMP to assume management of the restaurant when the Franchise Agreement expires under Section 14.C or to sell Mountain Mike's the Restaurant and leasehold under Section 15.E.

**Fourth**, as a result of SV Adventures' breach, MMP will suffer irreparable harm, including the loss or deprivation of possession of unique real property, loss of customers, damage to brand equity,

goodwill and market share, consumer confusion and other incalculable harms. MMP is likely to prevail on the merits of its breach of contract claims.

### 2. **MMP will suffer irreparable harm in the absence of preliminary relief.**

MMP's harm is clear. Initially, it will lose an interest in real property to which it has a contractual right. Because Restaurant location is critical (Adyani Decl., ¶¶ 29-32), and real property is inherently unique, harm is obvious and irreparable as a matter of law. *Park Vill. Aprt. v. Mortimer Howard Trust*, 636 F.3d 1150, 1159 (9th Cir. 2011) ("the loss of an interested in real property constitutes an irreparable injury."); *Stockton v. Newman*, 148 Cal. App. 2d 558, 564 (1957) (finding that depriving defendants of a particular piece of property may be considered irreparable "for in equity each parcel of real property is considered unique").

Moreover, Moreover, the Viscuso Defendants' immediate conduct—advertising a competing business on the Premises, selling competing products at the Premises, and potentially selling Mountain Mike's® brand-related signage and other operating assets from the Premises, will cause consumer confusion and the loss of customers, and unquantifiable damage to MMP's brand equity and goodwill.

Further, if the Court does not enjoin Defendants from preventing MMP to assume management of the Restaurant on the behalf, the Viscuso Defendants will breach the Franchise Agreement and remain in the Premises under another competing brand. The Viscuso Defendants' will have free reign to steal MMP customers and maximize their opportunity to take advantage of customer confusion and benefit from MMP brand equity and goodwill. The Viscuso Defendants' calculated breach, which keeps MMP out of the market while they benefit, is the picture of irreparable harm, as courts have held. *Donahue Schriber Realty Grp., Inc. v. Nu Creation Outreach*, 232 Cal. App. 4th 1171, 1185 (2014) (erosion of customer and tenant goodwill caused by the acts to be enjoined may support a finding of irreparable harm); *MCA Records, Inc.*, 90 Cal. App. 3d at 23 (finding lost profits and lost goodwill to be irreparable harm; affirming trial court's grant of the preliminary injunction). MMP's contracted-for purchase rights and the rights to Premises' leasehold to protect against precisely this kind of irreparable harm.

An injunction is appropriate here because MMP has no adequate remedy at law for the foregoing harm. A legal remedy (damages) is inadequate where "it would be extremely difficult to ascertain the

amount of compensation which would afford adequate relief." Cal. Civ. Proc. Code § 526(a)(5). Here, the harm involves deprivation of real property, for which damages is inadequate as a matter of law. *Park Vill. Aprt.*, 636 F.3d at 1159; *Stockton*, 148 Cal. App. 2d at 564 (finding that depriving defendants of a particular piece of property may be considered irreparable "for in equity each parcel of real property is considered unique"). But even if MMP were able to purchase the Restaurant after the merits decision, the compensation due for its lost customers, lost market share, consumer confusion, lost brand equity, and lost goodwill would be extremely difficult to ascertain. Cal. Civ. Proc. Code § 526(a)(5). Although this harm cannot be readily quantified, it will gravely harm MMP and, as such, MMP has no plain, speedy or adequate legal remedy.

### 3.    <u>The balance of hardships entirely favors MMP.</u>

The equities favor MMP. If the Viscuso Defendants are allowed to continue operating their new business out of the Premises, they will wrongfully profit from the goodwill and reputation that MMP has built. *Paradise Hills Assocs. v. Procel*, 235 Cal. App. 3d 1528, 1538 (1991) ("A preliminary injunction is justified when the trial court determines that a greater injury will result to the moving party if the injunction is denied than will result to the opposing party if the injunction is granted.") The Viscuso Defendants have already infringed on MMP's Mountain Mike's® Marks and trade dress, and their ability to continue infringing weighs heavily in favor of granting an injunction. *Polo Fashions, Inc. v. Dick Bruhn, Inc*., 793 F.2d 1132, 1135 (9th Cir. 1986) ("We should not require [plaintiff] to introduce concrete evidence that the defendants are likely to infringe again. If the defendants sincerely intent not to infringe, the injunction harms them little; if they do, it gives [plaintiff] substantial protection of its trademark.")

Conversely, the Viscuso Defendants cannot claim any irreparable harm from an injunction. The injunction sought maintains the status quo – allowing the Viscuso Defendants to continue to reap the benefits of the Restaurant until the merits are determined.  (MMP also has offered and continues to offer the Viscuso Defendants the option to manage the Restaurant under the Franchise Agreement until the merits are determined.) The Viscuso Defendants are not harmed by maintaining the status quo of operating a Mountain Mike's at the premises. Indeed, any harm they might suffer has been self-inflicted. Any argument that their new restaurant ambitions are harmed by the injunction fail: The Viscuso

Defendants' proposed new restaurant has no right to exist in the Premises, and because the Viscuso Defendants have no right to operate at all while the Franchise Agreement is in effect, they can point to no existing customer base that could be lost, no brand equity to be diminished, no goodwill to lose, no market share to protect, no consumers to confuse (aside from MMP's customers), and no revenues to lose. Moreover, the injunction is narrowly tailored to prevent the Viscuso Defendants from acting inconsistently with the terms of the Franchise Agreement and Guaranty to which they agreed and are already bound until resolution of the case. That is not a hardship, let alone irreparable harm.

Even if the Viscuso Defendants could show some cognizable harm, the Court should disregard it because their misconduct was undertaken with full knowledge of MMP's rights and with full understanding of the consequences that might ensue. Under these circumstances, there is no need to balance the equities. *See*, *e.g.*, *Warsaw v. Chicago Metallic Ceilings, Inc.*, 35 Cal. 3d 564, 573 (1984) (balancing of the equities is not appropriate "where it appears that the defendant acted with full knowledge of complainant's rights and with an understanding of the consequences which might ensue").

Finally, Defendant DC Management will not be harmed as its lease terms will not change with an order that it not interfere with the Viscuso Defendants' agreement to permit MMP, the franchisor, to assume management of the Restaurant on the Viscuso Defendants' behalf until final resolution of the arbitration.

As such, the balance of hardships strongly favors granting the requested injunctive relief.

### 4.     Granting the Injunction to Retain the Status Quo is in the Interest of the Public

An injunction benefits the public here primarily because allowing the Restaurant to continue operating as a MMP franchise will reduce consumer confusion. *IHOP Franchising, LLC v. Hameed*, 2015 U.S. Dist. LEXIS 12021 at *9-10 (E.D. Cal. Feb. 2, 2015) (finding that there is a strong interest in preventing consumer confusion, which is particularly present in dispute involving the termination of franchises—where consumer confusion increased). It also benefits the public when parties are required to uphold their contractual obligations. *Heat Factory USA, Inc. v. Schawbel Techs., LLC,* 2019 U.S. Dist. LEXIS 68964 at *23-24 (S.D. Cal. April 23, 2019) ("it is in the public interest to ensure that parties are upholding their contractual obligations.").

In sum all four factors demonstrate that MMP is entitled to an injunction to preserve the status quo while the parties arbitrate their contract claims.

## IV.     NO BOND SHOULD BE REQUIRED, OR ONLY A NOMINAL BOND SHOULD BE REQUIRED

Courts have held that "[d]espite the seemingly mandatory language, 'Rule 65(c) invests the district court with discretion as to the amount of the security required, *if any*. . . [t]he district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) (citation omitted). Additionally, "[a] bond may not be required, or may be minimal . . . where the movant has demonstrated a likelihood of success." *Ticketmaster L.L.C. v. RMG Techs., Inc.*, 507 F. Supp. 2d 1096 (C.D. Cal. 2007).

Here, MMP has shown that the Viscuso Defendants will suffer little or no harm from the injunction and that MMP has a strong likelihood of success. Indeed, the Viscuso Defendants will continue to profit from the Restaurant which will be managed on their behalf by the franchisor, MMP, which is highly motivated to preserve goodwill and sales at the Premises. There is no need for a bond. If the Court nevertheless requires a bond, it should be nominal.

## V.     CONCLUSION

An injunction is necessary to put a stop to Defendants' ongoing wrongful conduct and to prevent severe and irreparable harm to Plaintiff that cannot adequately be redressed by legal remedies.  For the foregoing reasons, MMP respectfully requests that the Court grant its motion and enter the relief requested.

Dated: December 21, 2021                    GREENBERG TRAURIG, LLP

By: */s/ Ryan C. Bykerk*
    Brent Sokol
    Ryan C. Bykerk
    Attorneys for Plaintiff
    MOUNTAIN MIKE'S PIZZA, LLC