UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MOUNTAIN MIKE'S PIZZA, LLC,<br><br>Plaintiff,<br><br>v.<br><br>SV ADVENTURES, INC.; SALVATORE VISCUSO; SANDRA VISCUSO; and DC MANAGEMENT, LLC,<br><br>Defendants. | No. 2:21-cv-02387-TLN-AC<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER** |

This matter is before the Court on Plaintiff Mountain Mike's Pizza, LLC's ("Plaintiff") Motion for a Temporary Restraining Order ("TRO"). (ECF No. 4.) Defendants SV Adventures, Inc., Salvatore Viscuso, and Sandra Viscuso (collectively, "Defendants") filed an opposition. (ECF No. 10.) Plaintiff filed a reply. (ECF No. 12.) For the reasons set forth below, the Court hereby DENIES Plaintiff's motion.

///
///
///
///
///
///
///

### I.   FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff entered into a franchise agreement with Defendants (the "Franchise Agreement") for a Mountain Mike's Pizza restaurant in El Dorado Hills. (ECF No. 1 at 2.) The Franchise Agreement expires on January 2, 2022. (*Id.*) Plaintiff is a franchisor of Mountain Mike's pizza restaurants that operates using a number of trademarks.[1] (*Id.* at 5.) On January 3, 2007, Plaintiff's predecessor entered into the Franchise Agreement with Khachatur Galstyan and Rita Galstyan to operate a Mountain Mike's pizza restaurant at 2201 Francisco Drive, Suite 110, El Dorado Hills, California 95762. (*Id.* at 7–8.) On April 23, 2008, Khachatur Galstyan and Rita Galstyan assigned the Franchise Agreement to SV Adventures, and SV Adventures assumed all the contractual obligations under the Franchise Agreement pursuant to an Assignment and Assumption Agreement. (*Id.* at 8.) In addition, Salvatore and Sandra Viscuso executed a Guaranty and Assumption of Obligations on April 23, 2008 in which they "personally and unconditionally" guaranteed that SV Adventures "will punctually pay and perform — each and every undertaking, agreement, covenant set forth in the [Franchise] Agreement" and agreed to be "personally bound by, and personally liable for the breach of, each and every provision in the [Franchise] Agreement . . . . " (*Id.* (citing ECF No. 1-13).)

In 2017, Salvatore and Sandra Viscuso moved operations of the restaurant to 2222 Francisco Drive, Suite 100, El Dorado Hills, CA 95762 (the "Premises") pursuant to a lease between SV Adventures and DC Management, LLC (the "Lease"). (*Id.* at 8–9.) On April 25, 2008, SV Adventures and DC Management, LLC executed an addendum (the "Addendum") to the Lease, which provides that the "Lessee shall be allowed to Assign the Lease to another franchisee who will operate with the same Agreed Trade Name . . . so long as Assignee agrees to accept full responsibility and obligations as Lessee under Lease, subject to Landlord's review and approval of full financial disclosure, and the maintenance of the guaranty as set with the lease." (*Id.* at 9 (citing ECF No. 1-15).)

---

[1] Plaintiff operates using the following trademarks: U.S. Reg. No. 1,716,063; U.S. Reg. No. 1,716,062; U.S. Reg. No. 2,004,536; U.S Reg. No. 3,467,126; U.S. Reg. No. 2,174,312; U.S. Reg. No. 4,703,140; and Ser. No. 88/911,537; Ser. No. 90/639,262. (*Id.* at 6–7 (citing ECF Nos. 1-3, 1-4, 1-5, 1-6, 1-7, 1-8, 1-9, 1-10, 1-11).)

2

      Section 1.D of the Franchise Agreement granted a franchise to SV Adventures to operate a restaurant for 15 years from the date of the Franchise Agreement. (*Id.* at 9.) The Franchise Agreement allows for a successor franchise but Defendants announced on August 3, 2021, that they did not intend to continue as franchisees, meaning the Franchise Agreement is set to expire on January 2, 2022. (*Id.*) Plaintiff alleges the two sections of the Franchise Agreement sets forth its rights and obligations upon expiration. (*Id.*) First, § 15.E grants Plaintiff the right to purchase the restaurant in addition to the leasehold right to the Premises that is exercisable by providing notice within sixty days of the expiration of the Franchise Agreement. (*Id.* at 10.) Second, § 14.C gives Plaintiff the right to assume management of the restaurant while Plaintiff considers whether to exercise its option to purchase. (*Id.* at 10–11.) Plaintiff alleges that it confirmed on November 18, 2021 that the parties would not enter into a successor agreement and informed Defendants it intended to exercise the option under § 15.E and to acquire the restaurant and leasehold rights in the Lease. (*Id.* at 11.) Plaintiff notified Defendants on December 20, 2021 that it will assume management of the restaurant when the Franchise Agreement expires. (*Id.*)

      Plaintiff alleges Defendants responded on December 9, 2021 and refused to sell the restaurant to Plaintiff or assign the leasehold rights in the Lease. (*Id.*) Plaintiff further alleges Defendants have already negotiated an amendment to the Lease to allow them to operate in the same location under a different name after the Franchise Agreement expires and Defendants have been advertising their intent to operate "Viscuso[']s Pizza and Draft House" in January 2022. (*Id.*) Plaintiff contends this shows Defendants' intent to refuse to comply with the terms of the Franchise Agreement. (*Id.*) Plaintiff asserts Defendants have also stated an intent to sell Mountain Mike's signage and believes Defendants "may waste and dispose of operating assets, including fixtures, signs, furniture, equipment (including computers, telecopiers, and point of sale systems), furnishings, or related items used in operating a Mountain Mike's pizza restaurant, or may damage the Premises to further obstruct [Plaintiff's] right to purchase the [r]estaurant and assume the Lease." (*Id.* at 11–12.)

      Plaintiff alleges Defendants' conduct is an anticipatory breach of their contractual duties "to the sell the [r]estaurant and assign the Lease to [Plaintiff] under [§] 15.E" and "to allow

3

[Plaintiff] to assume management of the restaurant when the Franchise Agreement expires under [§] 14.C." (*Id.* at 12.) Plaintiff maintains § 5(A) of the Franchise Agreement protects its rights to its brand and trademarks and thereby limits Defendants' use to operation of the restaurant pursuant to the Franchise Agreement. (*Id.*) Plaintiff further alleges prior to the expiration of the Franchise Agreement, "and with the goal of transferring good will in the Mountain Mike's marks from [Plaintiff] to themselves," Defendants have begun to advertise and provide products for Viscuso's Pizza and Draft House out of the Premises while still using Mountain Mike's marks. (*Id.*) Plaintiff contends that this includes substantially copying the Mountain Mike's pizza restaurant menu and offering for sale and selling out of the Premises Viscuso's Pizza and Draft House food products on online and smartphone delivery websites. (*Id.* at 12–13.) Plaintiff alleges Defendants "are trying to trade on the large amount of good-will owned and enjoyed by [Plaintiff]," and "[c]onsumers will be misled that Viscuso's Pizza and Draft House is in some way connected with, sponsored by or affiliated with the well-established Mountain Mike's [p]izza [r]estaurants." (*Id.* at 13.)

On December 21, 2021, Plaintiff filed its Complaint, alleging various claims for injunctive and declaratory relief, trademark infringement, trademark dilution, unfair competition, breach of contract, breach of warranty, and tortious interference with contracts. (*See* ECF No. 1.) On December 22, 2021, Plaintiff filed the instant motion for a TRO. (ECF No. 4.)

**II.    STANDARD OF LAW**

A TRO is an extraordinary remedy. The purpose of a TRO is to preserve the status quo pending a fuller hearing. *See* Fed. R. Civ. P. 65. In general, "[TROs] are governed by the same standard applicable to preliminary injunctions." *Aiello v. One West Bank*, 2010 WL 406092, at *1 (E.D. Cal. Jan. 29, 2010) (internal citations omitted); *see also* Eastern District of California Local Rule ("Local Rule") 231(a).

Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam)). "The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until

a trial on the merits can be held." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981); *see also Costa Mesa City Emps. Ass'n v. City of Costa Mesa*, 209 Cal. App. 4th 298, 305 (2012) ("The purpose of such an order is to preserve the status quo until a final determination following a trial."); *GoTo.com, Inc. v. Walt Disney, Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000) ("The status quo ante litem refers not simply to any situation before the filing of a lawsuit, but instead to the last uncontested status which preceded the pending controversy.").

"A plaintiff seeking a preliminary injunction must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter*, 555 U.S. at 20. A plaintiff must "make a showing on all four prongs" of the *Winter* test to obtain a preliminary injunction. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). In evaluating a plaintiff's motion for preliminary injunction, a district court may weigh the plaintiff's showings on the *Winter* elements using a sliding-scale approach. *Id*. A stronger showing on the balance of the hardships may support issuing a preliminary injunction even where the plaintiff shows that there are "serious questions on the merits . . . so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id*. Simply put, plaintiffs must demonstrate, "that [if] serious questions going to the merits were raised [then] the balance of hardships [must] tip[ ] sharply" in [p]laintiffs' favor in order to succeed in a request for preliminary injunction. *Id*. at 1134–35.

### III. ANALYSIS

Plaintiff requests the Court enjoin Defendants' alleged trademark infringement and maintain the status quo pending arbitration. (*See* ECF No. 4.) As to the trademark claims, Plaintiff asserts Defendants are essentially operating a competing restaurant under the Plaintiff's marks because: (1) Defendants advertise their competing "Viscuso's Pizza and Draft House" products on smartphone application-based delivery services (e.g., DoorDash) to be picked up from the restaurant which bears Plaintiff's marks; (2) Defendants' online menu is copied and pasted from Plaintiff; and (3) Defendants adopt Plaintiff's product names, pizza size conventions, and product descriptions on the online menu. (ECF No. 4 at 2, 3, 18, 20.) Plaintiff submits

screenshots taken on December 17, 2021 of a DoorDash account for "Viscuso's Pizza" at the franchise location. (ECF Nos. 4-3, 4-8, 4-9.) Plaintiff also submits a picture of a sign on the door at the franchise location advertising that "Viscuso's Pizza and Draft House" is coming in January 2022. (ECF No. 4-5 at 2.)

To prevail on a trademark infringement claim, a plaintiff must establish that: "[1] it has a valid, protectable mark, and [2] the defendant's use of the mark is likely to cause consumer confusion." *OTR Wheel Eng'g, Inc. v. W. Worldwide Servs., Inc.*, 897 F.3d 1008, (9th Cir. 2018). Plaintiff argues it has valid, protectable marks and Defendants' conduct is likely to confuse consumers to believe Viscuso's Pizza and Draft house is connected with Plaintiff. (ECF No. 4 at 20.) Plaintiff therefore contends there is a rebuttable presumption of irreparable harm. (*Id.* at 24 (citing 15 U.S.C. § 1116(a) ("[a] plaintiff seeking any such injunction shall be entitled to a rebuttable presumption of irreparable harm . . . upon a finding of likelihood of success on the merits for a violation . . . [for] a preliminary injunction of temporary restraining order.")).) Plaintiff further argues if Defendants' conduct continues, it will cause irreparable harm to Plaintiff by "dilution of its trademark, loss of goodwill, loss of consumers, and harm to its brand." (*Id.* at 10–11, 24.)

In opposition, Defendants argue they have not at any time operated or performed business under any name other than Mountain Mike's Pizza and do not intend to do so until the Franchise Agreement expires on January 2, 2022. (ECF No. 10 at 9–10.) Defendants filed a declaration explaining that they reached out to DoorDash to create an account that was to be activated after January 2, 2022. (ECF No. 10-1 at 3.) Defendants were not aware the account had been activated prematurely until receiving an order on December 17, 2021. (*Id.*) The order had been cancelled, and Defendants assert they immediately deactivated the account, no money was exchanged under the name Viscuso's Pizza and Draft House, and no product was received by the consumer from Viscuso's Pizza and Draft House. (*Id.*) As for the signage at the franchise location, Defendants contend they immediately removed the signage after being told it was in violation of the Franchise Agreement. (ECF No. 10-1 at 2.) Defendants argue that because they

6

1 are not currently infringing any trademarks and do not intend to do so, Plaintiff's request for
2 injunctive relief as to its trademark claims is moot.  (ECF No. 10 at 8.)
3         Plaintiff has not persuaded the Court that it is likely to suffer immediate, irreparable harm
4 in the absence of emergency relief.  Even assuming there is a rebuttable presumption of
5 irreparable harm, Defendants have submitted evidence indicating that they have ceased the
6 alleged infringing conduct by taking down signage about Viscuso's Pizza and Draft House at the
7 franchise location and deactivating the DoorDash account.  (*See* ECF No. 10-1.)  Regardless of
8 whether Defendants' signage and representations on DoorDash harmed Plaintiff in the past,
9 Plaintiff "must still show that the threat of injury in the future is 'certainly impending' or that it
10 presents a 'substantial risk' of recurrence for the court to hear [its] claim for prospective relief."
11 *Munns v. Kerry*, 782 F.3d 402, 411–12 (9th Cir. 2015).  The Court cannot conclude that
12 preliminary injunctive relief is warranted based on the current record because there is insufficient
13 evidence — beyond mere speculation — that Defendants will continue to use Plaintiff's protected
14 marks after the Franchise Agreement ends.[2]  *See, e.g.*, *Flip Flop Shops Franchise Co., LLC v.*
15 *Neb*, No. CV 16-7259-JFW (EX), 2016 WL 9308328, at *2 (C.D. Cal. Oct. 4, 2016) (finding that
16 based on evidence that the defendants were no longer using the plaintiff's marks, brand, or
17 proprietary system, the plaintiffs could not "demonstrate the requisite irreparable injury necessary
18 to support the issuance of a temporary restraining order or an order to show cause")).
19         Even if Defendants resume the allegedly infringing conduct after January 2, 2022,
20 economic injury is insufficient to constitute irreparable harm.  *Herb Reed Enters., LLC v. Fla.*

---

[2]   In reply, Plaintiff argues "the DoorDash menu and front window sign infringement are only part of the equation." (ECF No. 12 at 7.)  However, Plaintiff ignores that these were the only grounds for infringement raised in the initial motion.  (*See* ECF No. 4.)  For the first time in reply, Plaintiff seems to suggest that a Facebook post by the El Dorado Hills Chamber of Commerce describing the upcoming "rebranding" of the location to Viscuso's Pizza and Draft House constitutes ongoing infringement.  (ECF No. 12 at 7; ECF No. 13 at 3.)  Plaintiff also argues in reply that Defendants will infringe on Plaintiff's marks in various ways after the Franchise Agreement ends, such as continued use of the exterior sign, colored trade dress, branded fixtures, and layout.  (ECF No. 12 at 7.)  Not only were these arguments improperly raised for the first time in Plaintiff's reply, but neither argument is persuasive.  Plaintiff fails to explain how Defendants can be held liable for a third party's Facebook post, and Plaintiff's arguments as to operations after the Franchise Agreement ends are too speculative at this time.

1    *Entm't Mgmt., Inc.*, 736 F.3d 1239, 1249–50 (9th Cir. 2013).  While loss of goodwill may
2    constitute irreparable harm, a plaintiff who attempts to establish irreparable harm via loss of
3    business reputation and goodwill must proffer evidence of that loss — a district court may not
4    base a finding of reputational harm on "platitudes rather than evidence." *Id.*  As a result,
5    evidence of reputational damage or harm to business goodwill sufficient to merit entry of
6    preliminary relief typically incorporates information provided by, or from the perspective of,
7    market-based sources external to the plaintiff itself.  *See, e.g.*, *Disney Enters., Inc. v. VidAngel,*
8    *Inc.*, 869 F.3d 848, 865 (9th Cir. 2017) (finding likelihood of harm to business goodwill was
9    supported by declaration that incorporated statements from plaintiff's customers raising concerns
10   about general behavior of competitor companies like defendant's); *Titaness Light Shop, LLC v.*
11   *Sunlight Supply, Inc.*, 585 F. App'x 390, 391 (9th Cir. 2014) (finding insufficient showing of
12   reputational harm alleged to result from non-movant's website's association with marijuana,
13   where evidence failed to establish that movant's customers were aware of non-movant's website
14   or its association with marijuana); *DFO, LLC v. Denny Bar Co., LLC*, No. 2:18-cv-02226-JAM-
15   KJN, 2018 WL 5880813, at *2 (E.D. Cal. Nov. 8, 2018) (holding that declaration submitted by
16   plaintiff's employee was insufficient to establish likelihood of harm to business goodwill because
17   it was based only on the declarant's opinion and experience regarding the relevant market, and
18   therefore "fail[ed] to present any concrete evidence that a loss of control of [plaintiff's] business
19   reputation has occurred or is likely to occur at all").  In the instant case, Plaintiff's conclusory
20   assertions that Defendant's conduct will irreparably harm its goodwill and reputation, without
21   more, are insufficient.

22   This analysis also forecloses Plaintiff's claim of irreparable harm in the context of the
23   breach of contract claims.  In addition to the alleged harms already addressed above, Plaintiff
24   argues it will also lose an interest in real property to which it has a contractual right unless the
25   Court allows Plaintiff to manage the franchise pending arbitration.  (ECF No. 4 at 29.)  Plaintiff
26   cites two cases: *Park Village Apartments v. Mortimer Howard Trust*, 636 F.3d 1150, 1159 (9th
27   Cir. 2011), and *Stockton v. Newman*, 148 Cal. App. 2d 558, 564 (1957).  Both cases are
28   distinguishable.  *Park Village* involved tenants facing eviction from their homes.  636 F.3d at

1159.  *Stockton* involved the sale of real property pursuant to a notice of default.  148 Cal. App. 2d at 564.  Here, Plaintiff is not facing eviction nor is the leasehold interest being sold as Defendants have purportedly signed a lease to remain at the subject location until 2027.  (ECF No. 4 at 14.)  Plaintiff thus fails to persuade the Court that it is likely at risk of losing a property interest in such a way to warrant emergency relief.

Lastly, it bears mentioning that Plaintiff's delay in bringing this motion — waiting until less than two weeks before the end of the Franchise Agreement — bolsters the Court's conclusion that Plaintiff has not shown it is likely to suffer irreparable harm.  *See Garcia v. Google, Inc.*, 786 F.3d 733, 746 (9th Cir. 2015).  According to Plaintiff's own briefing, it was aware as early as mid-November that Defendants intended to open a new restaurant at the franchise location upon expiration of the Franchising Agreement.  (ECF No. 4 at 16.)  To the extent Plaintiff was concerned about the potential breach of contract or trademark infringement, Plaintiff could have brought a motion for preliminary injunction over a month sooner.  *See* L.R. 231(b).

Plaintiff must make a clear showing on all four prongs of the *Winter* test to be eligible for the extraordinary remedy of a temporary restraining order.  *See All. for the Wild Rockies*, 632 F.3d at 1135.  Since the Court concludes Plaintiff has not made the required showing of imminent and irreparable harm in the absence of a temporary restraining order, the Court declines to address the remaining *Winter* factors.  *See MD Helicopters, Inc. v. Aerometals, Inc.*, No. 2:16-cv-02249-TLN-AC, 2018 WL 489102, at *2 (E.D. Cal. Jan. 19, 2018).

**IV.     CONCLUSION**

For the foregoing reasons, the Court hereby DENIES Plaintiff's Motion for a Temporary Restraining Order.  (ECF No. 4.)

IT IS SO ORDERED.

**DATED:  December 29, 2021**

Troy L. Nunley
United States District Judge